**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

WASHINGTON TOXICS COALITION;
NORTHWEST COALITION FOR
ALTERNATIVES TO PESTICIDES;
PACIFIC COAST FEDERATION OF
FISHERMEN'S ASSOCIATIONS, INC.;
INSTITUTE FOR FISHERIES RESOURCES,
          *Plaintiffs-Appellees,*

        v.

ENVIRONMENTAL PROTECTION
AGENCY; CHRISTINE TODD
WHITMAN,

               *Defendants,*

     and

CALIFORNIA PLANT HEALTH
ASSOCIATION; OREGON
AGRICULTURAL CHEMICALS &
FERTILIZERS ASSOCIATION; FAR
WEST AGRIBUSINESS ASSOCIATION;
AGRICULTURAL COOPERATIVE
COUNCIL OF OREGON; FRUIT
GROWERS LEAGUE OF SOUTHERN
OREGON; HOOD RIVER GROWER-
SHIPPER ASSOCIATION; HOP
GROWERS OF WASHINGTON; IDAHO
MINT GROWERS ASSOCIATION;
MALHEUR COUNTY ONION GROWERS
ASSOCIATION; NATIONAL POTATO
COUNCIL, ORCHARD VIEW FARMS;

No. 04-35138

D.C. No.
CV-01-00132-JCC

7721

OREGON ALFALFA SEED GROWERS ASSOCIATION; OREGON CRANBERRY FARMERS' ALLIANCE; OREGON HOP GROWERS ASSOCIATION; OREGON HORTICULTURAL SOCIETY; OREGON SEED COUNCIL; USA DRY PEA & LENTIL COUNCIL; WASCO COUNTY FRUIT & PRODUCE LEAGUE; WASHINGTON ASSOCIATION OF WHEAT GROWERS; WASHINGTON MINT GROWERS ASSOCIATION; WASHINGTON STATE HORTICULTURAL ASSOCIATION; WESTERN WASHINGTON AGRICULTURAL ASSOCIATION; OREGON DAIRY FARMERS; AMERICAN FOREST RESOURCE COUNCIL; OREGON FOREST INDUSTRIES COUNCIL; WASHINGTON FRIENDS OF FARMS AND FORESTS; OREGONIANS FOR FOOD AND SHELTER; WESTERN WASHINGTON GOLF COURSE SUPERINTENDENTS ASSOCIATION; NATIONAL AGRICULTURAL AVIATION ASSOCIATION; CALIFORNIA AGRICULTURAL AIRCRAFT ASSOCIATION; CROPLIFE AMERICA,
  *Defendant-Intervenors-Appellants.*

WASHINGTON TOXICS COALITION;
NORTHWEST COALITION FOR
ALTERNATIVES TO PESTICIDES;
PACIFIC COAST FEDERATION OF
FISHERMEN'S ASSOCIATIONS, INC.;
INSTITUTE FOR FISHERIES RESOURCES,
          *Plaintiffs-Appellees,*

          v.

ENVIRONMENTAL PROTECTION
AGENCY; CHRISTINE TODD
WHITMAN,

          *Defendants,*

CALIFORNIA PLANT HEALTH
ASSOCIATION; CROPLIFE AMERICA,
          *Defendant-Intervenors,*

          and

WASHINGTON STATE POTATO
COMMISSION,
     *Defendant-Intervenor-Appellant.*

No. 04-35212
D.C. No.
CV-01-00132-JCC

WASHINGTON TOXICS COALITION;
NORTHWEST COALITION FOR
ALTERNATIVES TO PESTICIDES;
PACIFIC COAST FEDERATION OF
FISHERMEN'S ASSOCIATIONS, INC.;
INSTITUTE FOR FISHERIES RESOURCES,
                *Plaintiffs-Appellees,*

                v.

ENVIRONMENTAL PROTECTION
AGENCY; CHRISTINE TODD
WHITMAN,

                *Defendants,*

CROPLIFE AMERICA, et al,
                *Defendant-Intervenor,*

                and

WASHINGTON STATE FARM BUREAU,
        *Defendant-Intervenor-Appellant.*

No. 04-35237
D.C. No.
CV-01-00132-JCC

WASHINGTON TOXICS COALITION;
NORTHWEST COALITION FOR
ALTERNATIVES TO PESTICIDES;
PACIFIC COAST FEDERATION OF
FISHERMEN'S ASSOCIATIONS, INC.;
INSTITUTE FOR FISHERIES RESOURCES,
                    *Plaintiffs-Appellees,*

                    v.

ENVIRONMENTAL PROTECTION
AGENCY; CHRISTINE TODD
WHITMAN,
          *Defendants-Appellants,*

          and

CALIFORNIA PLANT HEALTH
ASSOCIATION; OREGON
AGRICULTURAL CHEMICALS &
FERTILIZERS ASSOCIATION; FAR
WEST AGRIBUSINESS ASSOCIATION;
AGRICULTURAL COOPERATIVE
COUNCIL OF OREGON; FRUIT
GROWERS LEAGUE OF SOUTHERN
OREGON; HOOD RIVER GROWER-
SHIPPER ASSOCIATION; HOP
GROWERS OF WASHINGTON; IDAHO
MINT GROWERS ASSOCIATION;
MALHEUR COUNTY ONION GROWERS
ASSOCIATION; NATIONAL POTATO
COUNCIL; ORCHARD VIEW FARMS;
OREGON ALFALFA SEED GROWERS
ASSOCIATION; OREGON CRANBERRY
FARMERS' ALLIANCE; OREGON FARM
BUREAU FEDERATION; OREGON HOP
GROWERS ASSOCIATION;

No. 04-35244
D.C. No.
CV-01-00132-JCC
OPINION

OREGON HORTICULTURAL SOCIETY;
OREGON SEED COUNCIL; USA DRY
PEA & LENTIL COUNCIL; WASCO
COUNTY FRUIT & PRODUCE LEAGUE;
WASHINGTON ASSOCIATION OF
WHEAT GROWERS; WASHINGTON
MINT GROWERS ASSOCIATION;
WASHINGTON STATE HORTICULTURAL
ASSOCIATION; WESTERN
WASHINGTON AGRICULTURAL
ASSOCIATION; OREGON CATTLEMEN'S
ASSOCIATION; OREGON DAIRY
FARMERS; AMERICAN FOREST
RESOURCE COUNCIL; OREGON
FOREST INDUSTRIES COUNCIL;
WASHINGTON FRIENDS OF
FARMS AND FORESTS;
OREGONIANS FOR FOOD AND
SHELTER; WESTERN WASHINGTON
GOLF COURSE SUPERINTENDENTS
ASSOCIATION; NATIONAL
AGRICULTURAL AVIATION
ASSOCIATION; CALIFORNIA
AGRICULTURAL AIRCRAFT
ASSOCIATION; WASHINGTON STATE
POTATO COMMISSION; WASHINGTON
STATE FARM BUREAU; SYNGENTA
CORP PROTECTION; CROPLIFE
AMERICA,
                *Defendant-Intervenors.*

Appeal from the United States District Court
for the Western District of Washington
John C. Coughenour, Chief Judge, Presiding

Argued and Submitted
September 14, 2004—Seattle, Washington

Filed June 29, 2005

Before: Mary M. Schroeder, Chief Judge,
James R. Browning, and A. Wallace Tashima,
Circuit Judges.

Opinion by Chief Judge Schroeder

**COUNSEL**

Todd S. Kim, Department of Justice, Washington, DC, for the defendants-appellants.

Karen Budd-Falen, Budd-Falen law Offices, Cheyenne, Wyoming, for the defendants-appellants.

J. Michael Klise & Stephen P. Quarles, Crowell & Moring, Washington, DC, for the defendants-appellants.

Patti A. Goldman, Earthjustice, Seattle, Washington, for the plaintiffs-appellees.

**OPINION**

SCHROEDER, Chief Judge:

This litigation is about the Environmental Protection Agency's registration of 54 pesticide active ingredients that the plaintiff environmental coalitions fear may harm endangered or threatened salmon and steelhead in the waters of the Pacific Northwest. The plaintiffs, Washington Toxics Coalition et al., ("WTC"), contend that EPA violated the Endangered Species Act, 16 U.S.C. § 1536(a)(2), by failing to consult with the National Marine Fisheries Service before approving the pesticides.

EPA admittedly did not do any such consultation, and it agrees that the Endangered Species Act requires consultation with the National Marine Fisheries Service for action affecting these endangered or threatened fish. EPA contends, however, that because in registering the pesticides, it complied with the requirements of the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), 7 U.S.C. §§ 136, *et seq.*, it was not bound by the consultation requirements of the Endangered Species Act ("ESA"). EPA therefore appeals the district court's orders requiring EPA to engage in consultation and suspending EPA's authorization of the pesticides pending the consultation.

Plaintiffs Washington Toxics Coalition and Northwest Coalition for Alternatives to Pesticides are non-profit organizations that promote alternatives to toxic pesticides and seek to protect the environment from the harmful effects of pesticides. Plaintiff Pacific Coast Federation of Fishermen's Associations, Inc., is an organization of commercial fishermen that works to ensure the long-term survival of commercial fishing as a way of life. Plaintiff Institute for Fisheries Resources is a non-profit public interest marine resources protection and conservation organization.

A number of parties intervened in the action on the side of defendant EPA. The defendant-intervenors are CropLife America ("CLA"), Washington State Farm Bureau, and 35 other groups representing pesticide manufacturers, formulators, distributors, sellers, and applicators. The intervenors contend that the case is governed by the principles of judicial review and injunctive standards of the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 700, *et seq.*, rather than by the ESA. According to the intervenors, the district court lacked jurisdiction to examine the effect of pesticides apart from reviewing the administrative record pursuant to a cause of action established by the APA. Intervenors so contend despite the provision of the ESA creating individual causes of action to challenge its violations. *See* 16 U.S.C. § 1540(g)(1). The intervenors also contend that the injunctive relief granted by the district court was excessive. They challenge various aspects of the district court's injunctive orders requiring pesticide-free buffer zones around endangered salmon and steelhead habitat.

The district court granted the plaintiffs' requests for injunctive relief in a series of well-crafted orders, after allowing all parties, including the intervenors, to introduce evidence on the effects of the use of the challenged pesticides. Although the complaint originally disputed registration of hundreds of pesticides, the district court held EPA violated the ESA consultation requirement with respect to only 54 pesticide active

ingredients. The district court ordered EPA to initiate and complete consultation regarding the effects of those pesticide registrations on threatened and endangered salmon and steelhead according to a schedule set out in the opinion. Because it viewed the procedural violation of the ESA to have been a substantial violation authorizing extraordinary relief, the district court also enjoined EPA's authorization of any use of the pesticides within proscribed distances of salmon-supporting waters in California, Oregon, and Washington, pending EPA's fulfillment of its consultation obligations.

We affirm the district court's orders in their entirety.

## FACTUAL AND PROCEDURAL BACKGROUND

The National Marine Fisheries Service ("NMFS") since 1989 has classified approximately 25 species of salmon and steelheads, collectively known as salmonids, as "endangered" or "threatened" throughout the Pacific Northwest. The NMFS has determined that pesticides may kill or injure salmonids, and may affect future salmonid behavior and reproductive success. *See, e.g.*, 65 Fed. Reg. 42,422, 42,473 (2000). The district court found that scientific or competent declaratory evidence in the record demonstrated a causal link between the 54 pesticide active ingredients at issue in this case and direct or indirect adverse effects on salmonid populations. This is not disputed on appeal.

What is disputed is the applicability of ESA section 7(a)(2):

> Each agency shall, in consultation with and with the assistance of the Secretary, insure that any action authorized, funded, or carried out by such agency . . . is not likely to jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse modification of habitat of such species. . . .

16 U.S.C. § 1536(a)(2). Plaintiff WTC claims that EPA violated this section when EPA failed to consult with the applicable agency, the NMFS, about the registration of pesticide active ingredients potentially harmful to endangered or threatened salmonids. EPA maintains that it is not bound by the provision.

WTC filed this suit in 2001 under an ESA provision known as the ESA citizen suit provision and frequently used to compel agency action. It allows individuals to bring suit "to enjoin any person, including the United States and any other governmental instrumentality or agency . . . who is alleged to be in violation of any provision of this chapter or regulation issued under authority thereof." 16 U.S.C. § 1540(g)(1). *See Bennett v. Spear*, 520 U.S. 154, 173 (1997); *Envtl. Prot. Info. Ctr. v. Simpson Timber Co.*, 255 F.3d 1073, 1079 (9th Cir. 2001). WTC's complaint alleges that "EPA is violating § 7(a)(2) of the ESA, 16 U.S.C. § 1536(a)(2), and its implementing regulations, 50 C.F.R. Part 402, by failing to consult with NMFS regarding the effects of pesticide use under EPA pesticide registrations that 'may affect' endangered and threatened salmon and steelhead and/or their critical habitat."

EPA regulates pesticides under FIFRA, 7 U.S.C. §§ 136, *et seq.* We have observed that FIFRA sets forth a comprehensive regulatory scheme for controlling the use, sale, and labeling of pesticides. *Nathan Kimmel, Inc. v. DowElanco*, 275 F.3d 1199, 1204 (9th Cir. 2002). It bars any person in any state from distributing a pesticide EPA has not registered or exempted pursuant to FIFRA. 7 U.S.C. § 136a(a). FIFRA establishes the procedures through which EPA registers pesticides, labels pesticides, and cancels the registration of pesticides. *See* 7 U.S.C. § 136a-d. EPA took the position that only FIFRA, and not the ESA, governs the rescission of pesticide registrations.

Both sides moved for summary judgment. The parties submitted voluminous filings on the effect of the various pesti-

cides on endangered or threatened salmonids. The district court ruled that WTC had standing only to challenge the 54 pesticides for which it offered competent declaratory evidence demonstrating a causal link between EPA registration and harm to salmonid. That ruling is not at issue before us.

The district court also ruled that EPA was required to comply with the ESA, as well as with FIFRA. The district court rejected EPA's contention that WTC could challenge only EPA compliance with the pesticide registration provisions of FIFRA. The district court thus concluded that the ESA applies to agency actions taken pursuant to FIFRA, and that where endangered species may be affected, WTC could maintain a challenge to EPA's failure to consult under the ESA.

The district court held that as a matter of law, EPA violated section 7(a)(2) with respect to the disputed 54 pesticide active ingredients. Section 7(a)(2) consultation requirements apply to "each federal agency" and to "any action authorized, funded, or carried out by that agency." 16 U.S.C. § 1536(a)(2). The district court held that this comprehensive language includes EPA, and that EPA, having provided no evidence of formal or informal consultation as required by section 7(a)(2), violated the ESA. The district court ordered EPA to initiate and complete section 7(a)(2) consultation according to a prescribed schedule.

The district court also rejected the intervenors' arguments that the case could arise only under the APA. The intervenors argued that the proceeding contravened APA standards because the district court conducted its review outside an administrative record, without identifying any final agency actions or inactions under review, and without applying the APA's deferential standard of judicial review. The district court held that because the ESA independently authorized a right of action, the APA was inapplicable. *See* 16 U.S.C. § 1540(g)(1).

In subsequent orders, the district court granted WTC's motion for further, interim relief, holding such injunctive relief necessary to fulfill what we have termed the "institutionalized caution mandate[ ]" of the ESA. *See Sierra Club v. Marsh*, 816 F.2d 1376, 1389 (9th Cir. 1987). The district court relied on established law authorizing agency actions to continue during the section 7(a)(2) consultation process only if the actions are non-jeopardizing to the protected species and will not result in a substantive violation of the ESA. *See id.*; *Thomas v. Peterson*, 753 F.2d 754, 764-65 (9th Cir. 1985). The district court held that EPA did not meet its burden of showing that the 54 registrations were non-jeopardizing.

After a hearing and consideration of voluminous evidence bearing on the appropriate scope of injunctive relief, the district court entered an order that enjoined "EPA's authorization of any use of any pesticide identified in this order within 20 yards, or authorization of any aerial application within 100 yards, of any Salmon Supporting Waters in California, Oregon, and Washington." The order exempted pesticide uses EPA has determined to have "no effect" on the endangered species, and exempted particular uses "not likely to adversely affect" the endangered species. The district court also granted further injunctive relief for certain pesticides in urban areas, and required EPA and the intervening defendants to provide a specified point-of-sale notification to urban distributors of those pesticides.

The injunction provided that it would terminate automatically on (1) completion by EPA of its ESA section 7(a)(2) consultation requirements, (2) issuance by NMFS of a biological opinion, (3) a finding by EPA for ESA section 7(a)(2) purposes that the pesticide is "not likely to adversely affect" the endangered or threatened species, or (4) a finding by EPA for ESA section 7(a)(2) purposes that the pesticide will have "no effect" on the endangered or threatened species.

EPA and the intervenors on appeal challenge the applicability of the ESA requirements and the breadth of the injunctive relief ordered by the district court.

## DISCUSSION

### I.   Applicability of ESA Requirements

EPA argues on appeal, as it maintained in the district court, that it is bound to follow only the provisions of FIFRA, which include a limited provision dealing with endangered species. Under FIFRA, any interested person can petition EPA to cancel a registered pesticide. *See* 40 C.F.R. § 154.10. FIFRA allows EPA to suspend a registration immediately for an "imminent hazard," including an "unreasonable hazard to the survival of a species declared endangered or threatened" under the ESA. 7 U.S.C. § 136d(c)(1)-(2); § 136(l).

[1] EPA argues that ESA section 7(a)(2) does not confer independent responsibilities on EPA to comply with ESA provisions. That section provides:

> Each federal agency shall, in consultation with and with the assistance of the Secretary, insure that any action authorized, funded, or carried out by such agency . . . is not likely to jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse modification of habitat of such species . . . .

16 U.S.C. § 1536(a)(2).

[2] This circuit has not yet decided whether EPA's regulation of a pesticide under FIFRA bars a suit under the ESA asserting that the continued use of the pesticide violates the ESA. The Eighth Circuit has, however, and it has decided there is no bar. In *Defenders of Wildlife v. EPA*, 882 F.2d 1294 (8th Cir. 1989), environmental organizations brought

suit against EPA under the ESA, challenging the continued registration of above-ground pesticides containing strychnine. The EPA, as in this case, argued that the plaintiffs were limited to seeking a cancellation of strychnine registrations under FIFRA. *Id.* at 1298. The Eighth Circuit rejected EPA's position, holding that FIFRA does not exempt EPA from compliance with the ESA requirements when EPA registers pesticides. *Id.* at 1299. Therefore, the Eighth Circuit concluded that the ESA citizen suit provision permitted the plaintiffs to sue EPA to enjoin the alleged violation of the ESA. *Id.* at 1300. We agree with the Eighth Circuit that even though EPA registers pesticides under FIFRA, it must also comply with the ESA when threatened or endangered species are affected. *See id.* at 1299-1300.

This conclusion is consistent with our own prior holdings that compliance with FIFRA requirements does not overcome an agency's obligation to comply with environmental statutes with different purposes. For example, we have held that the registration and labeling of a substance under FIFRA does not exempt a party from its obligations under the Clean Water Act ("CWA"), 33 U.S.C. § 1342, to obtain a permit to discharge that substance. *Headwaters, Inc. v. Talent Irrigation Dist.*, 243 F.3d 526, 532 (9th Cir. 2001). We reasoned that the statutes have different and complementary purposes. *Id.* at 531-32. FIFRA's objective is to protect human health and prevent environmental harm from pesticides through a cost-benefit analysis of the pesticides. *Id.* The CWA's objective is to restore and maintain the integrity of the Nation's waters based on a determination that the discharge of the pollutant satisfies the limitations that EPA has imposed to protect water quality. *Id.*

For the same reasons, we also have held that the registration and labeling of a substance under FIFRA does not exempt an agency from its obligations under the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4332. *Oregon Envtl. Council v. Kunzman*, 714 F.2d 901, 905 (9th Cir.

1983); *see also Save Our Ecosystems v. Clark*, 747 F.2d 1240, 1248 (9th Cir. 1984). We concluded that a pesticide registration under FIFRA does not require the same examination of environmental concerns that an agency is required to make under NEPA. *See id.* at 1248.

**[3]** The statutes at issue in this case similarly have different but complementary purposes. FIFRA utilizes a cost-benefit analysis to ensure that there is no unreasonable risk created for people or the environment from a pesticide, taking into account the economic, social, and environmental costs and benefits of a pesticide's use. *Headwaters, Inc.*, 243 F.3d at 532. In contrast, the ESA affords endangered species the "highest of priorities" in assessing risks and benefits. *Tennessee Valley Auth. v. Hill*, 437 U.S. 153, 174 (1978). The reasoning of our case law therefore leads us to conclude that an agency cannot escape its obligation to comply with the ESA merely because it is bound to comply with another statute that has consistent, complementary objectives.

EPA also makes a corollary argument with respect to the remedy. It contends that it does not have any discretion to cancel a pesticide's use except through the regulatory framework in FIFRA, and that the district court therefore erred by granting injunctive relief under the ESA. EPA contends, in effect, that once a pesticide has been approved for use under FIFRA, EPA lacks discretion to meet any other legal obligations. For this remarkable conclusion EPA relies on cases in which the agency action had been completed and there was no ongoing regulatory authority. For example, in *Environmental Protection Information Center v. Simpson Timber Co.*, 255 F.3d 1073, 1083 (9th Cir. 2001), we held that the United States Fish and Wildlife Service did not have discretion to comply with the ESA regarding a permit that it had already granted and did not retain discretionary control to alter. Similarly, in *Sierra Club v. Babbitt*, 65 F.3d 1502, 1508-09 (9th Cir. 1995), we held that the Bureau of Land Management did not have discretion to comply with the ESA regarding a right-

of-way it had already granted by contract to a private entity before passage of the ESA. We have expressly observed that in both of those cases, the agency activity had been completed and was not ongoing. *See, e.g.*, *Turtle Island Restoration Network v. Nat'l Marine Fisheries Serv.*, 340 F.3d 969, 977 (9th Cir. 2003).

[4] The principle enunciated in those cases does not apply here. This is because here EPA retains ongoing discretion to register pesticides, alter pesticide registrations, and cancel pesticide registrations. *See* 7 U.S.C. § 136a-d. Because EPA has continuing authority over pesticide regulation, it has a continuing obligation to follow the requirements of the ESA. We have respected such continuing obligations in well-reasoned authority that binds us here. In *Turtle Island*, *supra*, environmental organizations brought suit against the NMFS, alleging that the issuance of fishing permits pursuant to the High Seas Fishing Compliance Act, 16 U.S.C. §§ 5501-5509, required consultation under the ESA. We recognized that the ESA consultation requirement applies only if the agency has the discretionary control "to inure to the benefit of a protected species." 340 F.3d at 974. We held that the Compliance Act permit decisions were ongoing agency actions because they entailed an "ongoing and lasting effect" and because the NMFS *could* condition permits to benefit listed species. *Id.* at 977; *see also Pac. Rivers Council v. Thomas*, 30 F.3d 1050, 1053 (9th Cir. 1994).

[5] In this case, EPA has similar discretion "to inure to the benefit" of listed species. Pesticide registrations under FIFRA are ongoing and have a long-lasting effect even after adoption. EPA retains discretion to alter the registration of pesticides for reasons that include environmental concerns. *See* 7 U.S.C. §§ 136d(c)(1)-(2), 136(l). Therefore, EPA's regulatory discretion is not limited by FIFRA in any way that would bar an injunction to enforce the ESA.

[6] Finally, EPA argues that administrative exhaustion or primary jurisdiction under FIFRA applies in this case, and

that the district court should first have required the plaintiffs to exhaust FIFRA remedies before entering an injunction. FIFRA, of course, contains a limited administrative remedy. Section 136d(c) of FIFRA allows the Administrator to suspend a pesticide creating an "unreasonable hazard to the survival of a species declared endangered or threatened by the Secretary pursuant to the Endangered Species Act" without following the normal procedural requirements of FIFRA. 7 U.S.C. §§ 136d(c)(1)-(3), 136(l). Under FIFRA any interested person can petition EPA for cancellation of a pesticide. *See* 40 C.F.R. § 154.10. Neither FIFRA nor the ESA, however, suggest any legislative intent to require exhaustion of the FIFRA remedy before seeking relief under the ESA. *See Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 207 (1994) (exhaustion is required only where Congress' intent to allocate review to an administrative body is "fairly discernible in the statutory scheme").

[7] As the district court concluded, the mere fact that FIFRA recognizes EPA authority to suspend registered pesticides to protect listed species does not mean that FIFRA remedies trump those Congress expressly made available under ESA, or that FIFRA provides an exclusive or primary remedy. The scheme of the two statutes suggests the exact opposite. Indeed, this court has allowed plaintiffs to challenge whether agency pesticide permit decisions comply with other environmental statutes, even though the plaintiffs did not first pursue administrative remedies under FIFRA. *See Headwaters*, 243 F.3d at 530-32 (challenging EPA compliance with Clean Water Act); *Merrell v. Thomas*, 807 F.2d 776 (9th Cir. 1986) (challenging EPA compliance with National Environmental Policy Act). EPA and the intervening defendants cite no relevant authority supporting their position. The doctrines of exhaustion of remedies and primary jurisdiction are inapplicable in this case.

## II.   Applicability of APA

[8] Intervenor CLA argues that the district court erred by not applying the APA and its limited provision for judicial

review of final agency action. The APA provides judicial review for "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. The district court correctly held, however, that the ESA citizen suit provision creates an express, adequate remedy. That provision states: "[A]ny person may commence a civil suit on his own behalf . . . to enjoin any person, including the United States and any other governmental instrumentality or agency . . . who is alleged to be in violation of any provision of this chapter or regulation issued under the authority thereof." 16 U.S.C. § 1540(g)(1). Because this substantive statute independently authorizes a private right of action, the APA does not govern the plaintiffs' claims. Plaintiffs' suits to compel agencies to comply with the substantive provisions of the ESA arise under the ESA citizen suit provision, and not the APA. *See, e.g.*, *Pac. Rivers Council*, 30 F.3d at 1056; *Peterson*, 753 F.2d at 763-64.

### III. Challenges to Scope of Injunctive Relief

**[9]** The intervenors scatter a number of challenges to the scope of relief that amount to the contention that, although the district court could order the agency to comply with the ESA, it had to permit the continuing use of the pesticides during consultation. The purpose of the consultation process, however, is to prevent later substantive violations of the ESA. *Sierra Club v. Marsh*, 816 F.2d at 1389. The remedy for a substantial procedural violation of the ESA — a violation that is not technical or de minimis — must therefore be an injunction of the project pending compliance with the ESA. *Id.*; *Peterson*, 753 F.2d at 764. It is well-settled that a court can enjoin agency action pending completion of section 7(a)(2) requirements. *See Sierra Club v. Marsh*, 816 F.2d at 1389; *Peterson*, 753 F.2d at 765.

ESA section 7(d) also belies the intervenors' contention that further injunctive relief could not be granted during consultation. Section (7)(d) states:

> After initiation of consultation required under subsection (a)(2), the Federal agency and the permit or license applicant shall not make any irreversible or irretrievable commitment of resources with respect to the agency action which has the effect of foreclosing the formulation or implementation of any reasonable and prudent alternative measures which would not violate subsection (a)(2) of this section.

16 U.S.C. § 1536(d). Section 7(d) was enacted to ensure that the status quo would be maintained during the consultation process, to prevent agencies from sinking resources into a project in order to ensure its completion regardless of its impacts on endangered species. *See, e.g.*, *Pac. Rivers Council v. Thomas*, 936 F. Supp. 738, 745 (N.D. Idaho 1996). There is no irreversible or irretrievable commitment of resources at issue in the present case. Rather, it is the very maintenance of the "status quo" that is alleged to be harming the endangered species.

The intervenors also argue that the district court erred by assigning EPA the burden of showing that its actions were non jeopardizing to endangered or threatened species, and instead should have made the plaintiffs demonstrate "imminent irreparable harm" or "substantial and immediate irreparable injury." The intervenors alternatively argue that the district court did not properly balance the interest in protecting endangered species against the costs of the injunction when crafting the scope of the injunction.

**[10]** We have held that the appropriate remedy for violations of the ESA consultation requirements is an injunction pending compliance with the ESA. *See Peterson*, 753 F.2d at 764. We have also allowed non-jeopardizing agency actions to continue during the consultation process. *See, e.g., Sierra Club v. Marsh*, 816 F.2d at 1376. We have not expressly stated who bears the burden of showing that the action is non-

jeopardizing, but the burden should be on the agency, the entity that has violated its statutory duty.

Placing the burden on the acting agency to prove the action is non-jeopardizing is consistent with the purpose of the ESA and what we have termed its "institutionalized caution mandate[ ]." *Sierra Club v. Marsh*, 816 F.2d at 1389. We said as much in *Thomas v. Peterson*, where the defendant, the U.S. Forest Service, urged the district court to conclude that absent proof by the plaintiffs to the contrary, a proposed project was not likely to affect an endangered or threatened species. 753 F.2d at 765. We held that this was an inappropriate finding for the district court to make. *Id.* "It is not the responsibility of the plaintiffs to prove, nor the function of the courts to judge, the effect of a proposed action on an endangered species when proper procedures have not been followed." *Id.* The district court correctly assigned EPA the burden of proving that its actions were non-jeopardizing.

The district court was not required to balance interests in protecting endangered species against the costs of the injunction when crafting its scope. Congress has decided that under the ESA, the balance of hardships always tips sharply in favor of the endangered or threatened species. *See Marbled Murrelet v. Babbitt*, 83 F.3d 1068, 1073 (9th Cir. 1996).

Finally, the EPA challenges protective measures for urban pesticide sales. The district court concluded that for the use of certain pesticides in urban areas, buffers alone are an insufficient remedy to ensure that jeopardy to endangered salmonids will be avoided. Rather than completely banning those pesticides in urban areas, the district court required EPA to develop and distribute point-of-sale notifications detailing pesticide harm to salmonids. EPA nevertheless argues this portion of the injunction impermissibly impinges on its authority.

**[11]** The injunctive relief granted was well within the district court's discretion to require compliance with the ESA

and to tailor a remedy pursuant to Federal Rule of Civil Procedure 65. *See United States v. Olander*, 584 F.2d 876, 880-81 (9th Cir. 1987), *vacated on other grounds*, 443 U.S. 914 (1979).

## CONCLUSION

**[12]** For the foregoing reasons, we affirm the district court's orders enjoining EPA pending its compliance with the ESA section 7(a)(2) consultation requirements.

**AFFIRMED.**