AMERICAN BIRD CONSERVANCY, Forest Conservation Council, and Conservation Council for Hawaii, Plaintiffs,

v.

FEDERAL COMMUNICATIONS COMMISSION, Defendant.

No. CV 05–00461DAELEK.

United States District Court, D. Hawai'i.

Jan. 5, 2006.

Alletta Belin, Belin & Sugarman, Santa Fe, NM, Paul H. Achitoff, Earthjustice Legal Defense Fund, Honolulu, HI, for American Bird Conservancy, Forest Conservation Council, Conservation Council for Hawai'i, Plaintiffs.

Joel Marcus, Federal Communications Commission, Washington, DC, Kristen Byrnes Floom, U.S. Department of Justice, ENRD Wildlife & Natural Resources Div, Seth M. Barsky, U.S. Department of Justice, Environment & Natural Resources Division, Washington, DC, Susan L. Launer, Federal Communications Commission, Washington, DC, for Federal Communications Commission, Defendant.

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

DAVID ALAN EZRA, District Judge.

The Court heard Defendant Federal Communication Commission's Motion to Dismiss on December 5, 2005. Alletta Belin, Esq., and Paul Achitoff, Esq., appeared at the hearing on behalf of Plaintiffs; Kris-

ten Byrnes Floom, Esq., appeared at the hearing on behalf of Defendant. After reviewing the motion and the supporting and opposing memoranda, the Court GRANTS Defendant's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(1).

## BACKGROUND

Plaintiffs American Bird Conservancy, Forest Conservation Council, and Conservation Council for Hawaii (collectively "Plaintiffs"), brought suit in the instant action seeking to compel Defendant Federal Communications Commission ("FCC") to consult with the U.S. Fish and Wildlife Services ("FWS") in connection with existing communication towers in the Hawaiian Islands that it alleges are harming local endangered birds, and to prevent the FCC from delegating responsibility for determining when such consultation is necessary.

Plaintiffs allege that between 1996 and 2001, the FCC impermissibly delegated to licensees, applicants, and tower companies its responsibility under Section 7 of the Endangered Species Act ("ESA"), 16 U.S.C. § 1536. In doing so, the FCC permitted these parties to act as "non-federal representatives" and to self-determine whether their proposed actions would threaten or affect endangered species under the ESA.

Under the administrative framework adopted by the FCC, any entity seeking to use a communication tower or antenna that poses a potential hazard to air navigation must register it with the FCC. As part of this process, applicants must complete FCC Form 854, in which Question 38 requires the party to assess whether the tower or antenna "may have a significant environmental effect" as defined in 47 C.F.R. § 1.1307. If a registration applicant answers "no" to question 38, the FCC undertakes no further environmental examination.[1]

In this action, Plaintiffs state that seven of the communication towers registered by the FCC during this period are having deleterious affects on the populations of the Newell's shearwater and/or the Hawaiian petrel birds. Plaintiffs contend that the policies and procedures adopted by the FCC in registering these seven towers were insufficient to comply with its obligations under the ESA. Plaintiffs also allege that the FCC has a continuing obligation to ensure that such towers are not threatening local endangered species, yet has failed to do so. Therefore, Plaintiffs seek declaratory and injunctive relief to: (1) declare that the FCC is violating the ESA by failing to initiate or complete consultation with FWS on the impacts of the seven communication towers and require the FCC to engage in such consultations, and (2) declare that the FCC is violating the ESA by delegating consultation responsibilities to tower owners and licensees without an independent review and determination by the FCC, and prohibit it from further delegating such responsibility.

On September 27, 2005, the FCC filed the instant Motion to Dismiss on the basis that the provisions of the Hobbs Act, 28 U.S.C § 2341, and Communications Act of 1934 ("Communications Act"), 47 U.S.C. § 402, divest this Court of subject matter jurisdiction to hear the case. The FCC contends that judicial review of FCC actions and orders lies exclusively within the circuit courts. Plaintiffs filed their Opposition to the Motion to Dismiss on November 17, 2005, and the FCC filed its Reply on November 23, 2005.

## STANDARD OF REVIEW

In a motion to dismiss for lack of subject matter jurisdiction, the plaintiff bears the

---

1. Each of the seven towers in question replied "no" to question 38.

initial burden of proving that subject matter jurisdiction exists. *Prescott v. United States*, 973 F.2d 696, 701 (9th Cir.1992).

With a 12(b)(1) motion, a court may weigh the evidence to determine whether it has jurisdiction where the jurisdictional facts are not intertwined with the merits. *Rosales v. United States*, 824 F.2d 799, 803 (9th Cir.1987). If "the jurisdictional issue and substantive claims are so intertwined that resolution of the jurisdictional question is dependent on factual issues going to the merits, the district court should employ the standard applicable to a motion for summary judgment." *Autery v. United States*, 424 F.3d 944, 956 (9th Cir.2005) (quoting *Rosales*, 824 F.2d at 803).

The summary judgment standard under Federal Rule of Civil Procedure 56(c), requires this Court to view the evidence in the light most favorable to the nonmoving party. Furthermore, "[t]he court must not weigh the evidence or determine the truth of the matters asserted but must only determine whether there is a genuine issue for trial." *Autery*, 424 F.3d at 956 (quotation and citation omitted).

### DISCUSSION

The determination of whether this Court has subject matter jurisdiction to hear this case requires the Court to evaluate and reconcile two facially inconsistent jurisdictional provisions. Plaintiffs contend that this suit is brought as a violation of the ESA, which provides a private right of action in federal district court. The relevant portion of the ESA states that "the several district courts of the United States ... shall have jurisdiction over any action arising under this Act." 47 U.S.C. § 1540(c). Based on this language, Plaintiffs assert that notwithstanding other statutory provisions governing review of FCC decisions, Congress has mandated a

clear intention to provide an avenue of relief for violations of the ESA in the federal district courts.

The FCC, on the other hand, maintains that the lawsuit essentially challenges its policies and practices with regard to registering owners and licensees of communication towers or antennas. Therefore, judicial review of these actions in the district court is precluded by the specific jurisdictional provisions set forth in the Communications Act and the Hobbs Act. The Communications Act, codified at 47 U.S.C. § 402, states that "[a]ny proceeding to enjoin, set aside, annul or suspend any order of the [FCC] under this Act ... shall be brought as provided by and in the manner prescribed in chapter 158 of title 28, United States Code 28 USCS §§ 2341 et seq." The Hobbs Act, 28 U.S.C. § 2342, provides that "[t]he court of appeals (other than the United States Court of Appeals for the Federal Circuit) has **exclusive jurisdiction** to enjoin, set aside, suspend (in whole or in part), or to determine the validity of ... all final orders of the Federal Communications Commission made reviewable by section 402(a) of title 47." (Emphasis added).

Therefore, this Court must determine whether the jurisdictional provisions of the Hobbs Act are applicable to the present case, and if so, whether Congress intended, through its enactment of the ESA, to supercede those provisions and grant district courts jurisdiction to hear claims where a party alleges that FCC actions, policies, or regulations violate the ESA.

I. *Plaintiffs' Claims Fall Under The Jurisdictional Provisions Of The Communications Act And The Hobbs Act*

A. *The Suit Seeks To Enjoin, Set Aside, Annul Or Suspend An Order Of The FCC*

■ 47 U.S.C. § 402 states that proceedings to "enjoin, set aside, annul or

suspend any order of the Commission under this Act" shall be brought as provided by the Hobbs Act. Thus, as a threshold matter, the Court must determine whether Plaintiffs' suit seeks to "enjoin, set aside, annul or suspend" an order of the FCC undertaken pursuant to authority granted by the Communications Act.

The Ninth Circuit has adopted a broad interpretation of the term "order" as set forth in 47 U.S.C. § 402. Where a party seeks to challenge regulations promulgated by the FCC, jurisdiction in district court is improper. *Sable Communications of Cal., Inc. v. FCC,* 827 F.2d 640 (9th Cir.1987) (holding that the district court lacked jurisdiction over an action claiming that an FCC regulation unconstitutionally restricted telephone services); *United States v. Dunifer,* 219 F.3d 1004 (9th Cir. 2000) (finding that the jurisdictional limitation of 47 U.S.C. § 402 apples equally to affirmative defenses and offensive claims that challenge FCC implementing regulations). Furthermore, litigants may not evade the restrictions of section 402 by "requesting the district court to enjoin action that is the outcome of the agency's order." *FCC v. ITT World Communications, Inc.,* 466 U.S. 463, 468, 104 S.Ct. 1936, 80 L.Ed.2d 480 (1984).

Plaintiffs do not dispute that the FCC's actions, with regard to registering communication towers and establishing policies to govern these procedures, are undertaken pursuant to authority granted by the Communications Act. Instead, Plaintiffs assert that 47 U.S.C. § 402 is inapplicable because they are not attempting to "enjoin, set aside, annul, or suspend" an order of the FCC.

Plaintiffs make several arguments in support of this contention. Plaintiffs initially maintain that they are not challenging the regulations per se, but only their application to the seven communications towers at issue. Plaintiffs also argue that the FCC has an ongoing obligation to consult with the FWS over the potential impact on endangered species with regard to the towers, which is separate and distinct from the policies and regulations governing the initial registration.

Finally, Plaintiffs rely on the fact that the FCC has not issued an administrative determination as to whether its policies with regard to the registration of towers are consistent with its obligations under the ESA. Plaintiffs claim that since the FCC has not addressed this issue, there is no order that it is seeking to "enjoin, set aside, annul, or suspend." Therefore, it asserts that the instant case falls outside the jurisdictional constraints of Section 402. The Court finds these arguments unpersuasive.

Plaintiffs cannot avoid the proscriptions of Section 402 by claiming that they are not facially challenging the FCC's general delegation policy, but only its application to the towers. The FCC has an established policy, whether lawful or not, to allow applicants to make an initial self-determination as to whether the tower they seek to register "may have a significant environmental impact." The FCC uniformly applies this policy to all applicants, and therefore there is no difference between a suit challenging the applicability of the policy to certain towers or one challenging the general policy itself.

Plaintiffs also may not escape the jurisdictional provisions of the Hobbs Act by asserting that the FCC has abdicated an ongoing obligation to comply with the ESA that is separate and distinct from the initial registration guidelines. The FCC's regulations and procedures establish under what circumstances consultation with the FWS is necessary prior to registering a communication tower. Plaintiffs' allegation that the FCC has further obligations beyond this initial inquiry clearly calls into

question the adequacy of its regulations and policies, and therefore is tantamount to an action seeking to enjoin an FCC order.

Finally, an FCC decision to grant or deny the registration or licensing of a tower is a final action of the FCC and constitutes an "order" pursuant to the Communications Act. The absence of an administrative determination as to whether the FCC's current registration procedures for communication towers conform with the provisions of the EAS does not remove the matter from the purview of the Hobbs Act. Plaintiffs' suit expressly challenges the current policies and procedures instituted by the FCC in registering communication towers. Such actions fall within the definition of a suit to "enjoin, set aside, annul, or suspend" an order of the FCC. *See Dunifer*, 219 F.3d at 1007 (stating that "[w]e have squarely held, however, that challenging FCC regulations is equivalent to an action to enjoin, annul, or set aside an order of the FCC").

### B. Plaintiffs Do Not Elude the Hobbs Act By Asserting That They Are Bringing Suit Solely Under The ESA

██ Plaintiffs also maintain that the suit is not governed by the provisions of the Hobbs Act since they are challenging the FCC's actions as violative of the ESA. In determining whether the provisions of Section 402 are applicable to an action, the Court must look beyond the allegations of the complaint and consider the nature of the lawsuit and the relief sought. *See Cal. Save Our Streams Council, Inc. v. Yeutter*, 887 F.2d 908, 912 (9th Cir.1989) (stating that a plaintiff may not, through careful pleading avoid the strict jurisdictional limits set by Congress).

In *Yeutter*, environmental groups brought suit in district court challenging conditions set forth in a license issued by the Federal Energy Regulatory Commission ("FERC") for the construction and operation of hydroelectric projects. *Id.* at 910. The Federal Power Act ("FPA") grants FERC authority to issue such licenses. The plaintiffs alleged that the conditions adopted in the licenses pursuant to Section 4(e) of the FPA violated the National Environmental Protection Act ("NEPA") and the American Indian Religious Freedom Act. *Id.* at 910. The plaintiffs did not sue FERC directly, but rather sued the Forest Service on the basis that it failed to follow procedural and substantive steps in issuing a 4(e) letter to FERC. The FPA contains a similar provision to that of the Communications Act, which vests exclusive jurisdiction for review of orders issued by FERC in the United States Court of Appeals. *Id.* at 910–11; *compare with* 47 U.S.C. § 402.

The plaintiffs in *Yeutter* argued that they were not attacking the licensing decision by FERC, but instead were only seeking a determination of whether the Forest Service failed to follow procedural and substantive steps mandated by statutes outside the purview of the FPA. *Id.* at 911. Therefore, the plaintiffs asserted that its claims did not arise under the FPA and thus an independent statutory basis existed for district court jurisdiction. *Id.*

The Ninth Circuit affirmed the district court's dismissal for lack of subject matter jurisdiction, and found that despite the plaintiffs' attempt to characterize the suit as an attack on the 4(e) conditions imposed by the Forest Service, the suit was a clear "attempt to restrain the licensing procedures authorized by FERC." *Id.* At 912.

Similar to the situation in *Yeutter*, Plaintiffs cannot circumvent the proscriptions of 47 U.S.C. § 402 by merely couching their claim as an action against the FCC for violating the ESA. Despite Plaintiffs' assertion that they are not directly or implic-

itly challenging the Communications Act, it is clear that Plaintiffs' suit essentially attacks the administrative procedures and protocols established by the FCC in determining whether or not to seek consultation with the FWS. These procedures and protocols were promulgated by the FCC pursuant to Congressional authority granted to it under the Communications Act. Therefore, the Court finds that this suit is unequivocally one which seeks to "enjoin, set aside, annul or suspend" an order of the FCC within the statutory interpretation set forth by the Ninth Circuit.

## II. The ESA Does Not Grant District Courts Jurisdiction Otherwise Precluded By The Hobbs Act

■ Having determined that Plaintiffs' claims fall within the purview of the Hobbs Act and the Communications Act, the Court must determine whether Congress intended the private right of action as set forth in the ESA to remove claims for violations of the ESA from the jurisdictional constraints mandated by those statutes.

■ "Congress, acting within its constitutional powers, may freely choose the court in which judicial review may occur." *City of Rochester v. Bond*, 603 F.2d 927, 931 (D.C.Cir.1979). Moreover, a basic canon of statutory construction is that Congress intends to give its words their ordinary meaning. When Congress provides for exclusive jurisdiction, courts are obligated to assume that it meant exactly that. *Yeutter*, 887 F.2d at 911. Where two statutes are facially inconsistent in that one creates a general right of action and the other provides for exclusive jurisdiction in a particular court, "the well-established rule is to apply only the more specific legislation." *Id.; see also Rochester*, 603 F.2d at 931 (stating that "nonstatutory" review may be sought in district court under any applicable jurisdictional grant, however, where there is a special statutory review procedure, "it is ordinarily supposed that Congress intended that procedure to be the exclusive means of obtaining judicial review in those cases to which it applies").

Courts interpreting the interplay between statutes providing for exclusive jurisdiction in circuit courts and those granting a general right of action have consistently found that review is limited to the circuit courts. *Northwest Res. Info. Ctr. v. Nat'l Marine Fisheries Serv.*, 25 F.3d 872, 874 (9th Cir.1994) (hereinafter *Northwest* ) (holding that exclusive jurisdiction provisions of the Northwest Power Act are not subjugated by the private right of action contained in the ESA); *Yeutter*, 887 F.2d at 911–12 (finding that allegations that defendants violated the National Environmental Policy Act and the American Indian Religious Freedom Act did not alter the exclusive jurisdiction provisions set forth in the Federal Power Act); *Bywater Neighborhood Ass'n v. Tricarico*, 879 F.2d 165, 168 (5th Cir.1989) (stating that the private right of action as set forth in the National Historic Preservation Act does not invalidate the jurisdictional provisions of 47 U.S.C. § 402 governing challenges to FCC actions); *City of Rochester*, 603 F.2d at 931–32 (finding that a district court may not exercise jurisdiction over FCC actions otherwise exclusively within the jurisdiction of the Court of Appeals merely because a party alleges a violation of the National Environmental Policy Act).

In *Northwest*, 25 F.3d 872 at 874, the plaintiffs sought a declaratory judgment and injunctive relief in the district court to compel defendant Bonneville Power Administration to engage in consultation regarding the impact of a power system operation on threatened and endangered salmon. The plaintiffs alleged that the primary cause of the decline of salmon was

the construction and operation of hydro-electric flood control and water storage projects by the defendant. *Id.* The Ninth Circuit affirmed the district court's dismissal of the suit for lack of subject matter jurisdiction, finding that circuit courts have exclusive jurisdiction to challenges of actions authorized by the Northwest Power Act ("NWP Act"). *Id.* at 874–75. The court explicitly disagreed with the plaintiffs' contention that the authorization of citizen suits under the ESA, 16 U.S.C.S. § 1540(g), took precedence over the jurisdictional provision of the NWP Act. *Id.* at 875.

In facts closely analogous to those in *Northwest,* Plaintiffs in the case at bar seek injunctive and declaratory relief to compel the FCC to engage in consultation with FWS regarding the impact of the seven communication towers on endangered birds. Plaintiffs also contend that the private right of action provisions of the ESA trump the specific grant of exclusive jurisdiction in the court of appeals as set forth in 47 U.S.C. § 402. However, this Court finds no material difference in the provisions granting exclusive jurisdiction under the NWP Act and those in the Communications Act.[2] As such, it concludes that the Ninth Circuit's holding in *Northwest* is controlling on the issue, and mandates dismissal of the instant action for lack of subject matter jurisdiction.

Plaintiffs' reliance on the Ninth Circuit holdings in *Ruud v. U.S. Dep't of Labor,* 347 F.3d 1086 (9th Cir.2003) and *Washington Toxics Coalition v. EPA,* 413 F.3d 1024 (9th Cir.2005), to support their position that jurisdiction is proper in this Court is misguided. In *Ruud,* the plaintiff petitioned for review of a decision of the Department of Labor Administrative Review Board ARB approving the settlement of his whistleblower retaliation complaint pursuant to its authority under the Clean Air Act, 42 U.S.C. § 7622(b), as well as its authority under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9610(b). *Ruud,* 347 F.3d at 1087–88. 42 U.S.C. § 7622(c) provides that agency orders issued pursuant to authority granted under the Clean Air Act may be reviewed in the circuit courts, however, 42 U.S.C. §§ 9610(b) and 9613(b) provides district courts with original jurisdiction over challenges to agency orders issued pursuant to authority granted under CERCLA. The Ninth Circuit in reconciling the conflicting provisions, noted that where an agency is acting pursuant to authority granted separately under two statutes, jurisdiction might be appropriate in district court under certain circumstances. However, it found that jurisdiction in district court was improper in cases where a petition raises a common factual background and legal questions and cannot be effectively separated as in *Ruud. Id.* at 1090.

The *Ruud* court explicitly distinguished its holding from that of *Northwest* and *California Save Our Streams Council, Inc.* on the basis that in *Ruud,* authority for the agency action was grounded in two separate and independent statutes. *Id.* at 1088. Unlike the situation in *Ruud,* the actions of the FCC in formulating policies and procedures regarding the registration and licensing of towers in the instant case were undertaken solely pursuant to its authority granted under the Communications Act. The *Ruud* opinion makes clear that where a party seeks to challenge the actions of an agency authorized by a single statute, the jurisdictional provisions of that statute govern. *Id.* at 1088.

**2.** Plaintiffs assert that in *Northwest Res. Info. Ctr.,* a full administrative record existed, which is absent in this case. However, as discussed further *infra,* this does not form an adequate basis to deviate from the exclusive jurisdictional provisions of the Hobbs Act.

Plaintiffs' reliance on *Washington Toxics Coalition* is similarly unavailing. In *Washington Toxics Coalition*, plaintiff environmental groups sued the Environmental Protection Agency ("EPA") contending that it violated the ESA by not consulting with the National Marine Fisheries Service prior to approving the registration of pesticides. The EPA asserted that it complied with the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), and therefore was not bound by the consultation requirements of the ESA.

In *Washington Toxics Coalition*, there was no claim that the EPA in registering the pesticides was taking action pursuant to a statutory grant of authority that provides for exclusive jurisdiction for review of EPA orders. FIFRA also contains no such provisions. As such, the Court did not opine on the jurisdictional question presented in this case.

Therefore, the Court finds no basis upon which to hold that the private right of action provisions contained in the ESA vitiate the exclusive jurisdictional provisions of the Hobbs Act.

### III. Facially Inconsistent Timing Provisions Of The ESA And 28 U.S.C. § 2344

Plaintiffs claim that they cannot comply with the 60–day notice requirement as set forth in the ESA, while at the same time adhering to the provisions of 28 U.S.C. § 2344, which require an aggrieved party to file a petition to review an order by the FCC within 60 days of its entry. Plaintiffs contend that by construing these two provisions together, the FCC is essentially immune from suits challenging their actions as violative of the ESA. The Court disagrees.

■ Although the ESA may form the basis for an action challenging a regulation or rule promulgated by the FCC, such suits are still brought pursuant to the pro-

visions of 47 U.S.C. 402. This section does not require a party to provide a 60–day notice prior to bringing suit. *Washington v. Daley*, 173 F.3d 1158, 1170 n. 16 (9th Cir.1999) (holding that because the claims asserted were brought pursuant to the Magnuson Act as opposed to a direct action under the ESA, the 60–day notice requirement need not be met). Furthermore, even if such notice period is deemed necessary, Courts may apply a waiver of this period in the interests of justice. *Id.*

Accordingly, the Court finds that Plaintiffs' contention that it is precluded from challenging an action of the FCC as violative of the ESA based on the 60–day notice requirement is erroneous.

### IV. Inadequacy Of Statutory Review As A Basis For Jurisdiction

In *City of Rochester*, 603 F.2d at 934, the court stated that where a statute provides for exclusive review in the circuit court, such Congressional dictates must be followed "save for those instances where the statutory review would be inadequate." Plaintiffs rely on this statement to assert that jurisdiction in district court is proper in this case. In particular, Plaintiffs claim that: (1) the administrative record is insufficient for adequate review in the court of appeals, and (2) relief under the administrative process and subsequent circuit court appeal would be time consuming thereby jeopardizing the endangered birds. While the Court is not unsympathetic to Plaintiffs' contentions, it finds that these reasons do not form a basis to deviate from the exclusive review provisions of the Hobbs Act.

#### A. The Absence Of An Administrative Record Does Not Affect Jurisdiction Where The Action Falls Squarely Within The Provisions Of A Special Review Statute

■ Plaintiffs assert that the exclusive jurisdictional provisions set forth in the

Communications Act are only triggered when an adequate administrative record has been established for review in the circuit courts. Where no administrative record exists, Plaintiffs assert that jurisdiction is proper in the district court. The Court again disagrees.

Several courts have utilized the presence or absence of an administrative record as a basis for determining whether an agency's challenged actions fell within the scope of the specific terms of the statute granting exclusive jurisdiction. *See, e.g., Gas Pipe Line Co. v. FPC,* 181 F.2d 796 (D.C.Cir. 1950), *overruled by Investment Co. Inst. v. Bd. of Govs. of the Fed. Reserve Sys.,* 551 F.2d 1270 (D.C.Cir.1977). This type of analysis was especially prevalent in early cases, which struggled with the definition of the term "order" as st forth in many of the special review statutes. *See generally* Jonathan A. Schorr, *The Forum for Judicial Review of Administrative Action: Interpreting Special Review Statutes,* 63 B.U.L.Rev. 765 (1983). However, where the challenged actions of an agency are squarely within the terms of a statute granting exclusive jurisdiction, the absence or presence of an administrative record does not affect the calculus of where jurisdiction is proper. *See Harrison v. PPG Indus.,* 446 U.S. 578, 593, 100 S.Ct. 1889, 64 L.Ed.2d 525 (1980). In *Harrison,* the Supreme Court stated that where an appellate court "finds itself unable to exercise informal judicial review because of an inadequate judicial record ... an appellate court may always remand the case to the agency for further consideration."[3] *Id.* at 594, 100 S.Ct. 1889; *see Telecomm. Research & Action Ctr. v. FCC,* 750 F.2d 70, 78 (D.C.Cir.1984) (stating that "[w]e find untenable any suggestion that appellate

review of nonfinal agency action may be inadequate due to Courts of Appeals' inability to take evidence").

As discussed above, the Ninth Circuit has unequivocally determined that challenges to FCC actions of the nature brought by Plaintiffs fall within the contemplation of the *Hobbs Act.* Plaintiffs' argument that the Court must further inquire as to whether an adequate administrative record exists to determine whether jurisdiction is proper is not supported by the law.

While Plaintiffs claim that there is an insufficient administrative record for review in the court of appeals, Plaintiffs have not undertaken steps to create such a record. Plaintiffs cannot rely on their failure to take the appropriate measures to create an administrative record, and then assert that the lack thereof compels jurisdiction in the district court.

The FCC, through its regulatory framework, provides several avenues through which to challenge FCC actions and create an administrative record for review. 47 C.F.R. § 1.115(a) states that:

> Any person aggrieved by any action taken pursuant to delegated authority may file an application requesting review of that action by the Commission. Any person filing an application for review who has not previously participated in the proceeding shall include with his application a statement describing with particularity the manner in which he is aggrieved by the action taken and showing good reason why it was not possible for him to participate in the earlier stages of the proceeding.

---

**3.** While the Court recognizes that remand to an administrative agency will invariably cause delays in the disposition of the suit, the Court's task is not to determine which forum is more ideally situated to rapidly adjudicate a matter. Rather, the Court is compelled to follow the dictates of Congress *See Harrison,* 446 U.S. at 593, 100 S.Ct. 1889.

47 C.F.R. § 1.115(a). Thus, Plaintiffs could have filed an application with the FCC requesting review as to whether its actions in delegating consultation responsibilities to tower owners and licensees without independent oversight by the FCC violates the provisions of the ESA. This would presumably create an adequate administrative record for review in the circuit court.

Plaintiffs also have an administrative avenue to compel the FCC to engage in consultation with the FWS over the towers in question. 47 C.F.R. § 1.1307(c) states that:

> If an interested person alleges that a particular action ... will have a significant environmental effect, the person shall submit to the [FCC] a written petition setting forth in detail the reasons justifying or circumstances necessitating environmental consideration in the decision-making process. (See § 1.1313). The Bureau shall review the petition and consider the environmental concerns that have been raised.

47 C.F.R. § 1.1307(c). This provision sets forth an administrative procedure by which Plaintiffs can challenge the FCC's failure to consult with the FWS regarding the towers. Plaintiffs are undoubtedly aware of this provision as they on April 9, 2004, filed simultaneously with their notice of intent to bring an ESA citizen suit against the FCC, a petition with the FCC requesting NEPA compliance in connection with the registration and licensing of the towers pursuant to 47 C.F.R. § 1.1307(c).

Plaintiffs claim that despite the filing of their petition with the FCC in April 2004, the FCC has failed to undertake any action regarding this matter. Although the FCC disputes this fact,[4] even if Plaintiffs are correct, their remedy for delay in the disposition of this matter lies in a petition for mandamus in the court of appeals. *See Telecomms. Research & Action Ctr. v. FCC,* 750 F.2d 70, 75–76 (D.C.Cir.1984) (stating that exclusive review of FCC action in the Court of Appeals, read in conjunction with the All Writs Act, 28 U.S.C. 1651(a), vests the Court of Appeal with jurisdiction to issue a writ of mandamus where unreasonable delay is shown on the part of the FCC). While the Court is not unmindful of the inevitable delays, which often accompany the administrative review process as set forth under the regulations, this is an argument more appropriately addressed to Congress as opposed to the courts. *See Harrison,* 446 U.S. at 593, 100 S.Ct. 1889.

**B. Delays Caused By The Administrative Review Process Alone Do Not Warrant Departure From The Statutory Mandate**

Plaintiffs assert that the communication towers present an ongoing threat to the Newell's shearwater and Hawaiian petrel birds, and that the available avenue to address this issue is inadequate. Plaintiffs contend that petitioning the FCC for a decision on this matter may take years, and that an appeal directly to the Ninth

---

**4.** The FCC contends that it has undertaken a number of actions in response to Plaintiffs' petition and Notice of Violations. In particular it assert that it has asked the relevant tower owners to provide information about their towers. It also asked the FWS to provide information concerning listed threatened and endangered species in the vicinity of each tower. As a result of information provided by the FWS, the FCC determined that four of the towers did not pose a threat to endangered birds. For the other nine towers, the FCC ordered the registrants to prepare a biological assessment, which it contends that they have submitted. The FCC states that it is currently in the process of reviewing these biological assessments.

Circuit will likely result in the matter being remanded to the FCC for a decision.

While the Court is certainly not unsympathetic to this concern, Plaintiffs desire for an accelerated disposition of the matter is not in and of itself a basis for the Court to depart from the directives of Congress. As noted above, Plaintiffs may seek a writ of mandamus in the court of appeals to force the FCC to accelerate its administrative processes. *See Telecomms. Research & Action Ctr. v. FCC,* 750 F.2d at 76–76.

## CONCLUSION

For the reasons stated above, the Court GRANTS the Federal Communication Commission's Motion to Dismiss for lack of subject matter jurisdiction.

IT IS SO ORDERED.