THOMPSON, Senior Circuit Judge,
dissenting:
Because I disagree with the conclusion in Part III of the majority opinion that the EPA had the authority to consider the impact on endangered and threatened species in making its decision to transfer administration of the pollution permitting system to the State of Arizona, I respectfully dissent.
As the majority observes, the requirements of section 7 of the Endangered Species Act “apply to all [agency] actions in which there is discretionary Federal involvement or control.” 50 C.F.R. § 402.03. “Where there is no agency discretion to act, the [Endangered Species Act] does not apply.” Natural Res. Def. Council v. Houston, 146 F.3d 1118, 1125-26 (9th Cir.1998). We have previously held that an agency lacks the requisite discretion to act when the agency does not have the authority to take action on behalf of endangered or threatened species. Ground Zero Ctr. for Non-Violent Action v. United States Dep’t of the Navy, 383 F.3d 1082, 1092 (9th Cir.2004) (where agency lacks discretion, to require compliance with section 7 of the Endangered Species Act “would be an exercise in futility”); Turtle Island Restoration Network v. Nat’l Marine Fisheries Serv., 340 F.3d 969, 974 (9th Cir.2003) (“[T]he discretionary control retained by the federal agency must have the ability to inure to the benefit of a protected species. If no discretion to act is retained, then consultation would be a meaningless exercise.”) (internal citation omitted); Sierra Club v. Babbitt, 65 F.3d 1502, 1509 (9th Cir.1995) (“[W]here ... the federal agency lacks the discretion to influence the ... action, consultation would be a meaningless exercise; the agency simply does not possess the ability to implement measures that inure to the benefit of the protected species.”).
The majority interprets the “discretionary involvement” language of 50 C.F.R. § 402.03 to be “coterminous with” all actions “authorized, funded, or carried out” by a federal agency. Stated differently, the majority now holds that any action which comes within a federal agency’s de-cisionmaking authority falls within the scope of section 7(a)(2) of the Endangered Species Act. In my view, our cases do not take such an expansive view of the meaning of § 402.03. Rather, we have consistently recognized that an agency may have decisionmaking authority and yet not be empowered, either as an initial matter or in conjunction with some continuing authority, to act to protect endangered or threatened species. See Marbled Murrelet v. Babbitt, 83 F.3d 1068, 1074-75 (9th Cir.1996) (federal agency’s decision to consult with and to provide advice to private entity was not discretionary agency action triggering section 7); Sierra Club v. Babbitt, 65 F.3d at 1508-1510 (holding that although the Bureau of Land Management *980 retained the right to object to a road development project in three specified circumstances, “the agency simply [did] not possess the ability to implement measures that inure to the benefit of the protected species.”); cf. Turtle Island Restoration Network, 340 F.3d at 975 (concluding that Congress’ decision to use the words “ ‘including but not limited to’ ” in the statute granting the Fisheries Service the authority to issue fishing permits “contemplated that the list of potential obligations that the United States had under the Agreement was not exhausted by those listed in the subsection”).
Here, the EPA did not have discretion to deny transfer of the pollution permitting program to the State of Arizona; therefore its decision was not “agency action” within the meaning of section 7 of the Endangered Species Act.[1] The Clean Water Act, by its very terms, permits the EPA to consider only the nine specified factors. If a state’s proposed permitting program meets the enumerated requirements, the EPA administrator “shall approve” the program. 33 U.S.C. § 1342(b). This Congressional directive does not permit the EPA to impose additional conditions. Although the majority quite properly concludes that a federal agency cannot escape its obligation to comply with section 7 of the Endangered Species Act when it is “bound to comply with another statute that has consistent, complementary objectives,” Wash. Toxics Coalition v. EPA, 413 F.3d 1024 (9th Cir.2005), here, the EPA has an obligation to evaluate the state’s application against nine exclusive requirements. 33 U.S.C. § 1342(b); see also Am. Forest & Paper Ass’n v. EPA, 137 F.3d 291, 297 (5th Cir.1998) (“The language of [§ 1342(b) ] is firm: ... ‘Unless the Administrator of EPA determines that the proposed state program does not meet [the specified] requirements, he must approve the proposal.’ ”) (quoting Save the Bay, Inc. v. EPA, 556 F.2d 1282, 1285 (5th Cir.1977)); Nat’l Res. Defense Council v. EPA 859 F.2d 156, 173-74 (D.C.Cir.1988) (observing that “[t]he [Clean Water Act] specifies prerequisites for state assumption of the program ... and commands the Administrator to approve the state permit system once he determines that the statutory requirements and administrative guidelines are met.”). To impose the additional requirement of consultation under section 7 would be inconsistent both with the EPA’s statutory obligation to consider only the requirements enumerated in § 1342(b) and with the Clean Water Act’s clearly expressed objectives. See 33 U.S.C. § 1251(b)(“It is the policy of the *981 Congress to recognize, preserve, and protect the primary responsibilities and rights of States to prevent, reduce, and eliminate pollution,” and “that the States will manage ... and implement” the NPDES pollution permitting program).
Nor, in my view, does the EPA possess the kind of continuing authority to monitor states’ administration of their pollution permitting programs that would render its oversight discretionary. As the majority notes, the EPA’s limited oversight under 33 U.S.C. § 1342(c) relates only to the substantive standards of the Clean Water Act and does not grant any additional continuing review authority that would permit meaningful section 7 consultation.
The EPA’s authority to grant or to deny the State of Arizona’s application to administer the pollution permitting program was nondiscretionary; I would deny the petition for review.

. The majority concludes that pursuant to SEC v. Chenery Corp., 318 U.S. 80, 87, 63 S.Ct. 454, 87 L.Ed. 626 (1943) (Chenery /), it may not deny the petition for review on this basis because the EPA did not contend that it lacked discretion to consult under section 7 in conjunction with the transfer of pollution permitting authority to Arizona. We have, however, previously declined to take such a broad view of Chenery and instead have observed that although " [generally, a reviewing court may only judge the propriety of an agency’s decision on the grounds invoked by the agency, ... the court is not so bound when, as here, the issue in dispute is the interpretation of a federal statute.” Ry. Executives’ Ass’n v. ICC, 784 F.2d 959, 969 (9th Cir.1986). The majority’s conclusion further disregards our obligation to review an agency’s statutory mandate de novo, see Portland Adventist Med. Ctr. v. Thompson, 399 F.3d 1091, 1095 (9th Cir.2005); see also Am. Rivers v. FERC, 201 F.3d 1186, 1194 (9th Cir.2000) (noting that review of "substantive issues of statutory construction” ”proceed[s] along [a] different analytic path[]” and is "subject to [a] separate standard[ ] of review” than review of an agency’s compliance with procedural requirements), and, in doing so, to "give effect to the unambiguously expressed intent of Congress.” Chevron v. Nat’l Res. Defense Council, 467 U.S. 837, 843, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).